[No. 16743.   Department Two.   November 14, 1921.]

E. H. LESTER, *Appellant*, v. S. B. MILLS, *Respondent*.[1]

ARBITRATION AND AWARD (16) — CONCLUSIVENESS—EVIDENCE—AD-
MISSIBILITY.   Where an award has been made by arbitrators, the
testimony of an arbitrator, in a subsequent action between the
parties, is inadmissible for the purpose of varying the award with
respect to an item which was a proper subject of the arbitration. ·

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered February 2, 1921, upon the verdict of a jury rendered in favor of the defendant, in an action on account. Affirmed.

*Gus L. Thacker*, for appellant.

*A. E. Rice* and *C. D. Cunningham*, for respondent.

PARKER, C. J.—The plaintiff, Lester, commenced this action in the superior court for Lewis county, seeking

[1]Reported in 201 Pac. 752.

recovery of compensation which he claimed to have earned, as against the defendant Mills, for the furnishing of feed in the care of stock for a period of several months following December 5, 1919. Mills' answer contained denials as to the several items of claimed compensation, and also affirmative allegations setting up several items of set-off and counterclaim, concluding with a prayer for an affirmative judgment against Lester in the sum of $1,200. A trial upon the merits resulted in a verdict of a jury awarding Mills recovery against Lester in the sum of $300. A judgment was rendered accordingly; from which Lester has appealed to this court.

The only contention here made in behalf of Lester is that the trial court erred in its ruling which had the effect of deciding, as a matter of law, that Lester could not recover upon any of his claimed items of compensation accruing prior to February 11, 1920, because the proof conclusively showed that upon that date such claimed items had been settled between the parties and fully satisfied, in pursuance of an award of arbitration voluntarily caused by the parties to be made on that day.

On December 5, 1919, Mills, for a period of some five years, had been living upon Lester's farm, in Lewis county, under a ten-year lease thereof. The lease covered the implements and stock upon the farm, as well as the land and buildings thereon; and provided for the payment of rent by a division of the profits of the farm in kind, or the proceeds of the marketing of the produce and increase of the stock, from time to time, and the final division of the undisposed-of produce and increase of the stock, save as the lease otherwise specifically provided, at the termination thereof. The lease contained, among other things, the following:

"At any time during the life of this lease, or at the expiration of same, should the parties hereto not agree in their division or settlement in any form or manner, they hereby agree to submit their differences to three dis-interested persons for arbitration, and agree to abide by their decision."

Early in December, 1919, both parties seemed to have arrived at the tentative conclusion that, by reason of then existing conditions, they would voluntarily terminate the lease as soon as they could arrive at a settlement of their respective rights under the lease upon its voluntary termination; but we think the evidence conclusively shows that they did not effect such a termination of their relations under the lease until February 11, 1920; on which day they voluntarily caused to be made, in pursuance of the above-quoted language of the lease, an arbitration by three disinterested arbitrators, settling their respective rights under the lease at that time; that is, as to what amount either then owed the other in money, and what each was entitled to in the division of the produce and increase of the stock. Settlement was made between them in accordance with the award so made and the leased property then surrendered by Mills to Lester. The award made by the arbitrators is dated February 11, 1920, the day upon which it was actually made, and is in terms in all respects as to all items, in the present tense. Section 9 of the award reads as follows:

"(9) Concerning the grain we find as follows:

"(a) There is a shortage of oats which we place a value of $398.20 on.

"(b) The wheat on the place is to be divided equally between them."

Upon the trial of the case, counsel for Lester interrogated one of the arbitrators, who was then upon the witness stand, as follows:

"Referring to paragraph 9 of defendants' Exhibit C [the award], I will ask you if you took into consideration the grain that had been used by the parties E. H. Lester and S. B. Mills for the feeding of stock up to February 11, 1920, and if in that award and amount fixed, a credit was given to S. B. Mills for that feed so used up?"

Plainly this referred to feed produced upon the farm. Objection to this inquiry was made by counsel for Mills, which was by the court sustained, upon the theory that it was an attempt to exclude, by oral testimony of one of the arbitrators, an item which was a subject of arbitration according to the plain and unambiguous terms of the award read in the light of the submission to arbitration. It is conceded that no attempt was made to impeach the arbitration. We are quite convinced that the ruling of the trial court was correct. 2 R. C. L. 386; 5 C. J. 240.

Counsel for Lester, in asking the question ruled out by the trial court, evidently was proceeding, and is now proceeding, upon the theory that the lease had been actually terminated on December 5, 1919, and that the arbitration was being made as of that date. It is true, as is pointed out by counsel for Lester, that Lester at that time moved into the dwelling upon the leased premises and lived with Mills thereafter, joining with Mills in giving some attention to the care of the stock upon the place. But without reviewing the evidence, we think it sufficient to say that, in our opinion, it conclusively shows that there was no termination, or intended termination, of the lease at that time, and that the relation of the parties continued under the lease undisturbed, so far as their rights thereunder were concerned, up until the arbitration was actually made, and settlement made between them accordingly; which, as we have seen, did not occur until February

11, 1920. We conclude that the trial court did not err in its ruling, though such ruling had the effect of deciding, as a matter of law, that the matter sought to be proven was foreclosed by the arbitration.

Mrs. Mills is a party to this action and, of course, will, with her husband, reap the benefit of the judgment which is here affirmed. Her name is omitted from our discussion merely for convenience of expression.

The judgment is affirmed.

HOVEY, MAIN, HOLCOMB, and MACKINTOSH, JJ., concur.